*Richmond.*

S. V. R. R. Co. v. Supervisors of Clarke County.

January 10th, 1884.

1. TAXATION—*Remedy against illegal.*—By a long course of decisions it has been settled that the remedy against the attempt to coerce the payment of an illegal tax is by injunction. *City of Richmond* v. *Crenshaw,* 76 Va. 936.

2. CONSTITUTION— *Counties—Taxation—Railroads.*—County authorities are not authorized by the constitution of this State, independent of the action of the legislature, to assess railroad or other property for taxation and county levies. *Va. and Tenn. R. R. Co.* v. *Washington Co.,* 30 Gratt. 471.

3. LEGISLATURE—*Counties—Taxation—Railroads.*—By Acts 1879–80, ch. 106, § 1, the legislature, for the first time, empowered the supervisors to levy a tax on the real estate of railroad companies whose roads pass through their county, prescribing that such tax should be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment per mile of the same property made by the State for its purposes. *B. & O. R. R. Co.* v. *Koontz, Treasurer,* 77 Va. 698.

4. CONSTITUTIONALITY OF STATUTES — *Assessment for taxation.*— Act of February 27, 1880 (Acts 1879–80, ch. 106, § 1) is constitutional and valid. Constitution, Art. X, § 1, provides that all property shall be taxed in proportion to its value, *to be ascertained by law;* that is, by revenue commissioners, board of public works, or other officials, as the law may prescribe. And so likewise is Act of 1876–7, ch. 156, § 20, as to the assessment of State taxes.

5. STATE ASSESSMENT—*County levy—Ultra vires—Amendment of record.*— For State taxation no assessment was made on railroads until September 28th, 1881; and an assessment thereof for county taxation, if made by the supervisors *before* that time, would have been *ultra vires;* but if *made* after that time, it was valid, though the supervisors had previously made their levy as to property generally in the county. And if the clerk of the supervisors failed to enter an order made by them, they may amend their record by having the order entered *nunc pro tunc.*

6. CONSTRUCTION OF STATUTES—*Erroneous assessments.*—Code 1873, ch. 33, § 88, providing the mode and the forum for correcting erroneous assessments, is general in phraseology, and may apply as well to railroad companies as to individual tax payers.

7. COUNTY LEVIES—*County roads—County bonds.*—Tax for county road purposes, and for the purpose of paying the interest on the bonds of the county, which were given to raise money for a subscription to the said railroads, may as lawfully be levied on railroads as for any other county purposes.

8. CONSTITUTION—*Taxation—Railroads.*—Constitution, Art. X, § 1, provides that taxation by State, county or corporate bodies, shall be equal, uniform and *ad valorem.* If a county levy on railroads within the county be of ever so little higher rate than it is on other property in the county, such levy violates the constitution.

Appeal of the Shenandoah Valley Railroad Company from decree of circuit court of Clarke county, entered July 17th, 1882, dissolving an injunction which had been awarded it restraining the board of supervisors of said county from enforcing the collection of certain taxes or assessments on its property for county purposes; and also restraining A. Moore, treasurer of said county, from selling certain property levied on for said taxes.

Opinion fully states the case. This appeal was argued at Staunton, but decided at Richmond.

*Wm. H. Travers* and *Samuel J. C. Moore & Son,* for the appellant.

*Marshall McCormick,* for the appellees.

The demurrer to the bill of the appellant company should have been sustained by the court below.

*a*—The remedy of the company was full, adequate and complete in a court of law. Sections 87, 88 and 89 of chapter 33 of Code of 1873, provide a complete remedy for the tax payer to obtain redress against an erroneous assessment. Ample time and opportunity were afforded the ap-

pellant to resort to the tribunal clothed with authority by the statute to relieve it against the alleged improper assessment, for the tax upon its property was imposed as far back certainly as December 8, 1881, and the legal presumption being that the officer did his duty, the assessment must have been made known to the company and payment of the tax demanded.

The injunction was not asked for and granted until June 20, 1882. . . . In those cases, particularly *Bull* v. *Read*, and *Goddin* v. *Crump*, a large number of tax payers and citizens were interested in the same question, and, to avoid a multiplicity of suits and determine a question in which all had a common interest, the court at the suit of one assumed jurisdiction—but in this case no other citizen or tax-payer of Clarke county has the same interest with the appellant. It stands alone. Its case stands just as that of any other tax payer would stand who had been wrongfully or erroneously assessed with taxes. And yet it will hardly be contended that any citizen whose property, not in common with other citizens, had been erroneously assessed with taxation, could drag the county authorities into a court of equity.

*b*—" Equity will not interfere to restrain the collection of taxes, merely because illegal or void, unless there are some special circumstances attending the injury threatened to distinguish it from a mere trespass."

High on Injunctions, edition of 1874, top page 195.

In general unconstitutionality of the act will not give equity jurisdiction unless no adequate remedy at law is provided or unless injury is irremediable.

High on Injunctions, § 354.

Nor will irregularity in the assessment or errors in the execution of the power conferred on the officer induce equity to interfere.

Idem, §§ 355–56.

Nor will the fact that property subject to taxation has not been listed warrant interference.

Idem, § 362, note 3, top page 197.

. . . . . . . . .

*Second assignment of error.*—It is urged as error that the assessment, or rather levy, made upon the property of the appellant for road and school purposes was not equal to, but greater than, that imposed upon the property of other tax payers for the same purposes. The attention of the court is called to the fact that the bill, filed in the court below by the appellant, is entirely silent on this point. There is no allegation of such inequality. It was not raised by the pleadings, nor, indeed, at all in the court below. The court has not yet passed upon it, and has had no opportunity to do so. It cannot be said, therefore, to have erred in a matter upon which no action by it has been had or asked. If such inequality did exist in fact, it should have been brought to the attention of the lower court and its action upon it asked. This would have been, at least, fair to the honorable judge of that court. No such error, in fact, exists in the orders of the board of supervisors. A reference to the order of the 24th of June will show that the board was careful to say that the assessment of the property of the appellant was to conform to the rate that was imposed in each district in the year 1881 upon all other property. In other words, that the burden of taxation upon citizens and corporation should be uniform and equal. If the commissioner of the revenue has departed from this order, and made the rate of taxation greater upon the property of one than that of the other, the statute furnishes an easy and summary remedy against the wrong. It did not justify the interposition of a court of equity with all of its attendant costs. The same is true of the alleged double assessment. Nothing is more common than a resort to the county court to obtain relief from such an error.

. . . . . . . .

LACY, J., delivered the opinion of the court.

The appellant, the plaintiff in the circuit court, filed its bill in June, 1882, in the circuit court of Clarke to restrain the treasurer of Clarke county from selling the property of the company which had been levied on by him for the payment of county taxes, and from farther interference with the same, and to enjoin and restrain the board of supervisors of said county from taking any steps to enforce the collection of certain taxes assessed against the said plaintiff, and levied for by the said board of supervisors.

The plaintiff complained that the said board of supervisors, at its session on the 12th day of March, 1881, fixed the amount of the county levy for the year 1881, and closed said levy for that year, upon an examination of the books of the commissioner of the revenue of the county, which books furnished the basis of said assessments; that the said board of supervisors commenced making the assessments for 1881, at its meeting on the 10th day of November, 1880, and continued its work through several successive adjournments, until said 12th of March, 1881; that subsequently, without lawful authority, on the 8th day of December, 1881, the said board of supervisors undertook to impose a tax on the roadway and track of the said plaintiff, and its fixtures, for school purposes, for district school purposes and for road purposes, omitting to levy for county purposes for the year 1881. That on the said 8th day of December, 1881, the commissioner of the revenue for said county had assessed the roadway and track at $15,000 per mile, fixing its length at sixteen miles, making the total value, including $2,100 added for depots, &c., $242,100, and charging ten cents on the $100 of value for county levy, thirty cents for railroad tax, ten cents for county school tax, five cents for district school tax, five cents for road tax, amounting to sixty cents in all, and making the large sum

of $1,452.60. That the commissioner of the revenue had no lawful authority to make such assessment, as his books had been closed for the year 1881; that there was no authority in the said commissioner of the revenue, the board of supervisors, *nor anywhere else*, to levy such taxes for county purposes; that the said commissioner had already on his regular tax books for 1880–81 assessed a tax for both State and county purposes on the line of the road within said county; that the effect of this was a double tax; that under the constitution of the State the board of supervisors of a county "has only authority to make such levy upon the property *assessed with State taxes within the county*, and can only make the levy upon property named and listed on the books of the commissioner of the revenue for the particular year for which the assessment is made"; that it is thus provided in Article VII, § 2, of the constitution, and that neither the commissioner of the revenue nor the board of supervisors have a right to violate it; that under the act of assembly by which it is *attempted* to invest the boards of supervisors with authority to levy taxes on the roadways and tracks of railroads passing through their counties, no provision exists relating to tax for county road purposes, and that the levy of the county road tax was without that authority. An injunction was awarded on the 20th of June, 1882.

The board of supervisors demurred and answered, as also did the county treasurer.

The demurrer was for want of equity, the remedy being ample at law.

The answer set forth that in November, 1880, at the meeting of the board of supervisors, the clerk of the board was directed to obtain from the auditor of public accounts information touching the valuation put by the proper authority upon the property of the railroad company. At the meeting in December, 1880, defendant had provided a

revenue for school purposes, and in March, 1881, provided for general county purposes a tax of ten cents on all the property, real and personal, in the county, and to provide for outstanding county bonds a tax of thirty cents, to be levied and collected in like manner. That under these orders it was the duty of the commissioner of the revenue to embrace the property of the complainant company. That on the 8th day of December, 1881, the said board of supervisors proceeded specifically to provide for a tax upon the property of the complainant, but only from abundant caution, that its previous orders had been general and were sufficient to include all the property in the county. That at its meeting in July it had authority to fix the county levy, or as soon thereafter as practicable; that it had the power at its July meeting, or any other legal meeting, " among other things, to direct the raising of such sums of money as may be necessary to defray the county charges and expenses, and all necessary charges incident to or arising from the execution of their authority, if the same has not been provided for at its July meeting." That if any double taxes were imposed, they would be released; that it was desired to collect only one tax from the complainant; that the complainant owned property in the county of Clarke which had been assessed by the auditor of the State at $15,000 per mile, and this valuation had been the basis of assessment for county purposes as required by law. That the books of the commissioner of the revenue are prepared in Richmond by the auditor of public accounts alike for all the counties, and that in many counties of the State there is no railroad, and that in a county in which a railroad is situated, it is the duty of the commissioner of the revenue for the county to enter the same upon his books; that such action is required by law, and that there is no provision in the constitution of the State which forbids such action. That on the 8th December, 1881, an order

was passed providing for a railroad tax of thirty cents on the property of the complainant company, but the clerk omitting to record this order at that time, it has been since entered upon its order book on the 24th of June, 1882, since this suit was brought. That the power of taxation conferred by law upon the board of supervisors is a general one, the only limitation being that the rate of taxation shall be the same as that imposed on other property for the same purposes.

The cause came on to be heard on the 19th day of July, 1882, in vacation, when the injunction was dissolved by decree entered in the cause.

From this decree an appeal was applied for to this court, which was allowed.

The first question for consideration is that raised by the demurrer, the jurisdiction of a court of equity being denied, upon the ground that the complainant's relief in a court of law is full and complete. Upon this question, there can be but little doubt. Such jurisdiction in a court of equity has been frequently sustained by this court, and cannot now be questioned, and the circuit court rightly so decided. See *Goddin* v. *Crump*, 8 Leigh, 121; *Bull* v. *Read*, 13 Gratt 78; *Eyre* v. *Jacob*, 14 Gratt. 422.

It is clear, and we think will not be questioned, that the county of Clarke could not tax the property of the railroad at a higher rate than that at which other property in the county was taxed, either by a larger tax in the first instance, or by enforcing a double tax. The constitution of Virginia provides that taxation, whether imposed by the State, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. Art. 10, § 1. In the case of *Va. and Tenn. R. R. Co.* v. *Washington County*, 30 Gratt. 471, it was decided by this court that the board of supervisors had no

authority to assess the property of the Virginia and Tennessee railroad in Washington county for taxation, as no provision had been made for such assessment by the legislature. This was a controversy commencing in 1871, decided here in 1878. By the subsequent act of February 27, 1880, the legislature provided for the taxation of such companies by counties for county and school purposes, based upon the assessment per mile of the same property, made by the State for State purposes.

Without this act the board of supervisors has been held to be without the power or lawful authority to levy a tax for county purposes, as we have seen in the case of the *Va. & Tenn. R. R. Co.* v. *Washington County, supra.*

But it is claimed that the mode of assessment upon which the county levy is made on railroad property, under this act, is unconstitutional, and therefore void. That act authorizes the supervisors of a county to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of a railroad company whose road passes through such county. Such tax shall be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment per mile by the State for its purposes. The assessment for State purposes under the law is made by the board of public works of the State, upon the estimated value reported by each company to the auditor of public accounts of the State. See Acts 1876–'77, 138.

It is claimed that the mode in which all other real estate in the State is assessed is by officers of the county upon actual inspection, and that the law authorizing the assessment of railroad property by a State board, and directing the board of supervisors to follow the State assessment, is violative of the seventh article of the State constitution, section second, which directs the supervisors to assemble at the courthouse thereof on the fourth Monday in July

and proceed to audit the accounts of the county, examine the books of the assessors, regulate and equalize the valuation of property, fix the county levy for the ensuing year, apportion the same, &c., and perform such other duties as shall be prescribed by law. It would not be practicable to assess the roadway and track of a railroad in fragmentary portions, as they might lie in different counties. The constitution requires that all taxes, however imposed, shall be equal and uniform, and all property to be taxed in proportion to its value, this value to be ascertained as is prescribed by law; that is, the burden of all taxation is to be just and even, equality and uniformity everywhere. The whole theory of our system of taxation is based upon the idea that it is prepared by the representatives of the people upon due deliberation and reflection, and when thus prepared for State purposes it may be safely applied to the counties.

And any rule of construction which would give to the counties a power of taxation under the constitution, independent of legislative supervision and control, is in violation of the uniform policy of the State, and contrary to the true principles of the government.

When, therefore, the constitution gives the supervisors authority to fix the county levies, it only means that they shall ascertain and fix the amount of such levies, and the amount thus ascertained is to be collected from subjects of taxation as are prescribed by the legislature. *Va. & Tenn. R. R.* v. *Washington Co.*, 30 Gratt. If the commissioner of the revenue in the different counties should make an assessment of the railroad track, or other property within the county limits, such assessment would constitute no just basis of taxation.

A part of a railroad running through one county may be of little value, but if taken in connection with the whole, it may be as valuable as any other part. A railroad, from

one end to the other, is an entirety.   In that consolidated character it must be taxed for State purposes.

The supreme court of Kentucky, in passing upon this subject, declared that the railroad was not a fit subject for local taxation by the several counties through which it runs.   3 Bush. R. 648.   "A railroad is an entire thing and should be assessed as a whole.   It would be almost as reasonable and easy to divide a house or a locomotive into portions, and assess each portion separately, as to divide a railroad into portions, and assess each portion separately." *Gulf R. R.* v. *Morris*, 7 Kansas R. 210.   *Gulf R. R.* v. *Morris* is cited in *Va. & Tenn. R. R.* v. *Washington County*, with the following comment: "The policy of Virginia has uniformly been in accordance with the views expressed in these cases.   Prior to the war the assessment and taxation were based upon the dividends, or upon the receipts of the companies, ascertained by reference to the amount of passengers or the amount of freight transported.   Since the war the tax has been upon the net earnings of the respective roads paid quarterly into the treasury.   The State has, therefore, never regarded any mere local assessment of a part of a railroad within a county as furnishing any reliable basis of taxation."

The assessments made by the commissioners in different counties, for State and county purposes, were not intended to include the portions of the property of a railroad lying in the county.

At one time the railroads assessed and valued their own property, and that assessment was the basis of taxation. The board of public works now makes the assessment for the State.   Prior to the act of 1880, the supervisors had no authority to assess the property of railroads, but by that act which was passed subsequently to the decision of this court in the *Va. & Tenn. R. R.* v. *Washington County*, it is enacted that it shall be lawful, and authority is given

to the supervisors of a county, to levy a tax on the roadway and track, depots, depot grounds and lots, station buildings, and other real estate of a railroad company, whose road passes through such county ; such tax to be equal to the tax imposed upon other property for county and school purposes, and based upon the assessment per mile of the same property made by the State for its purposes.

As we have seen, the county supervisors had no authority to assess or levy a tax for county purposes upon the railroad property in question, except under this last named act, and under that act the basis of their taxation was to be upon the State valuation and assessment for its purposes.   Now, the board of public works did not make this assessment until the 28th day of September, 1881.   The reports of the railroads were not required to be filed before the auditor until June, and in March there had been no assessment by the State ; but under the law the State authorities in September made the assessment, as of the 1st day of February, 1881, from the reports made June 1st, 1881, to the auditor of public accounts, pursuant to sections 20 and 21 of the act for the assessment of taxes on persons, property, income, licenses, &c., and imposing taxes thereon for the support of the government and the free schools, and to pay the interest on the public debt, approved March 27th, 1876, as amended by the acts approved March 13th and 20th, 1877.   The report by the railroad companies to the auditor does not give the value of the real and personal property held by them in each county.   The act of March 15th, 1872, provided, that where a railroad or canal shall pass through more than one of the counties of the State, the report should show the estimated value of the property, herein above classified, that may be within the limits of each of said counties; and it shall be the duty of the auditor of public accounts to furnish the board of supervisors of each of the counties of the State through which any railroad or canal passes,

such estimated value of the property herein above specified as appears from such report to be within each of said counties. This act has subsequently in effect been repealed, and the supervisors are required, as we have seen, to await the action of the State authorities, and base their action upon such action of the State; and it was therefore not lawful for the supervisors of Clarke county to act before the State had so acted; consequently, at the meeting held by the said supervisors on the 8th December, 1881, we find them, levying a tax for county and school purposes upon the railroad property within the limits of the county, upon the basis of the State valuation upon the property assessed by the State at the rate of $15,000 per mile. We think, that so far as the basis of this tax did not exceed the valuation put upon the property by the State, and so far as it is equal and uniform, and not greater than that imposed upon other property for like purposes, such assessment and levy was legal, and is binding upon the said railroad company.

This court in the *Va. & Tenn. R. R.* v. *Washington County*, cited above, speaking of such county levies, says: " It is most obvious that the legislature, so far from making any provision for imposing the county levies upon the railroads of the State, has plainly evinced a purpose to prohibit the imposition of county levies in such cases. And until the legislature makes the necessary provision for carrying the constitution into effect in this particular, neither the supervisors of the counties nor the courts can furnish a remedy nor supply the want of proper legislation"; and, citing from Cooley on Constitutional Limitations, says: "Constitutional provisions requiring the legislature to provide by law uniform and just rules for the assessment and collection of taxes must be dormant until the legislation is had." This legislation is no longer wanting; but the legislature has provided for this taxation in the manner seen above, which is not in violation of any

provision of the constitution of the State, but appears to be in accordance with it in all respects. The second section of Article VII of the constitution pointed from the first toward legislation, if such was really necessary, to enable the county authorities to assess one species of property situated within the borders of the county more than another.

When the county authorities of Washington county undertook under the constitution of the State to tax the railroad property as other property within the limits of the county, the railroad company objected that no legislation had been had to give effect to the constitutional provision cited above; and this objection was sustained by the courts. Legislation having been since had providing for this taxation, in accordance with the suggestions of this court in the above cited case, it is now objected that the legislation is unconstitutional, because the *mode* in which the assessment is made is different for railroad property from that for other property situated in a county. As we have seen above, it was held by this court that there could be no just and satisfactory system of taxation provided by a fragmentary system of assessment, by sections, in each county, and that a railroad must be regarded, assessed and taxed as an entire thing, and equalization would result to the railroad, the taxed subject, if not to the several counties, and thus the object and spirit of the constitution would not be violated. This question was in effect decided by this court in the recent case of the *Baltimore and Ohio R. R. Co.* v. *Koontz, Treasurer,* 77 Va. 698. The act cannot be held to be in violation of the constitution of the State, but must be regarded as not only competent, but proper and necessary legislation to give effect thereto. Nor can we see any reason for saying that the supervisors having made their levy in March, 1881, as to property in the county generally, were without power to act afterwards, and that their levy in December, 1881, was without lawful authority. We think

the reverse of that proposition is true—that if this levy had been made in March, it would have been made without lawful authority, as the assessment for State purposes had not yet been made, and that it was made by lawful authority in December, the State assessment having been then made and furnished to the board by the proper State authorities. Nor do we think that it was illegal on the part of the said board to amend their orders, in so far as it was necessary to make them correct. If the clerk by accident or from any cause failed to enter an order made by the board, it was none the less the order of the board because it was not recorded; having been ordered, it properly belonged upon their records, and was properly put there. But not being put there until after suit brought, it would entitle the complainant to recover its costs, and the circuit court, as we have said, so decided.

But it is claimed that the State assessment of the property of a railroad is not only unconstitutional, because the mode of assessment is different for that property from the mode of assessment for other property in the county, but that the measure and methods for relief for the railroad property, if erroneously assessed, are different from those provided for other property within the county. That for all other property within the county redress can be had on application to the court in which the assessor gave bond and qualified; that the appellant can have no such relief under the law. The law in question provides that any person assessed with taxes, by any entry in either book (the land book and personal property book), may, within two years after the delivery of said book to the treasurer aforesaid, apply for relief to the court in which the assessor or commissioner gave bond and qualified, &c. If the court be satisfied that the applicant is erroneously charged on such book, &c., relief may be granted upon certain condition.

Now, it does not appear, from the law, nor does it appear from this case, that such relief might not be had by one person, as well as another, who had been assessed with taxes erroneously. Why may not the county court correct the commissioner's book as well when an error appears against one person's property thereon as another?

It certainly has not been contended otherwise in this case, as the learned counsel for the appellee has insisted here, that such was the proper course and such the proper forum for relief for the appellant in this case. The language of the law is general, any person; certainly it so appears as to the county taxes, assessed under the act of February, 1880. The act of 1876–77, as to the assessment for State taxes, has been hereinbefore considered, and its provisions appear to be violative of no principle of the constitution of the State. We are of opinion that there is no error in levying a tax for county road purposes, and that such expenses are obviously part of the county expenses, and taxes raised for that purpose are raised for county purposes.

It is further assigned as error, that a tax was levied to pay the interest, &c., on the bonds of the county which were given to raise money for a subscription to this very road. This objection is more specious than real. The railroad is not required to pay this tax because it was a subscription to it, nor is it excused from paying its due share of this, like any other county tax, in so far as it becomes a property owner in the county, along with all other property owners in said county, all paying a uniform tax in proportion to their respective possessions, assessed upon the same uniform basis.

But there is one more assignment of error which it is necessary to farther notice: "That the assessments against the railroad, for road purposes and county school purposes,

were greater than that assessed on other property in the county for like purposes. In districts numbers one and three the levy on other property was three cents on the $100 of property, on the railroad five cents for road purposes; for county school purposes it was eight cents in district number one, and seven and one-half cents in districts numbered two, three and four, and that imposed on the railroad ten cents." And this is admitted by the appellee. While the amount of the difference is small in the aggregate, it is violative of a great principle which lies at the foundation of our government, and is entrenched behind the bulwarks of the constitution of the State, and is placed by the said constitution within the jurisdiction of this court without reference to the pecuniary amount involved. The county of Clarke cannot be allowed, but must be restrained from enforcing the collection of this unequal tax. And the circuit court erred in dissolving the injunction in this case without first granting relief against this unequal tax, which was assessed and levied in violation of the first section of the tenth article of the constitution of this State, which provides that all "taxation, whether imposed by the State, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value." And the order of the circuit court dissolving the injunction in this cause must be reversed, and the cause remanded to the said circuit court, with directions to reinstate the said injunction, and otherwise proceed in this cause to a final decree, in accordance with the foregoing opinion.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid, and the argument of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court of Clarke county erred in dissolving the injunction in this cause without first correcting and equalizing the rate of taxation against the complainant company, so as to make the same correspond with the rate of taxation against all other property in the county of Clarke for similar purposes.

It is therefore considered by the court that the said decree of the said circuit court be reversed and annulled, and that the appellee pay to the appellant its costs by it expended in the prosecution of its appeal and supersedeas here; and it is further considered by the court, that this cause be remanded to the said circuit court of Clarke county for further proceedings to be had therein, in accordance with the foregoing opinion and the views herein.

All which, with a certified copy of said written opinion, is ordered to be certified to the said circuit court of Clarke county.

DECREE REVERSED.