# Richmond.

## COMMONWEALTH v. IVERSON BROWN.

### MARCH 21, 1895.

1. CONSTITUTIONAL LAW—*Oyster Tax—Uniformity—License—Income Tax.*— A statute which requires each tongman to make a return of the sales of oysters made by him during the week preceding, and which imposes a tax on such sales equal to the amount of tax levied by the State on any other species of property, and which prescribes penalties for failure to make such returns, but which allows such tongman, if he prefers, to pay a sum certain fixed by the statute in lieu of such tax, is constitutional, and is not in conflict with Sec. 1, Art. X. of the Constitution, nor with Sec. 2 of Art. X., but is in strict conformity with the latter section. The uniformity of the tax is not affected by the manner in which the value of the property is ascertained, nor by the fact that the tax is payable weekly, nor by the fact that penalties are prescribed for failure to make prompt returns, nor by the privilege extended of paying a sum in gross in lieu of the tax prescribed. Nor is such tax a license. Nor is it an income tax within the meaning of Sec. 4, Art. X. of the Constitution.

2. CONSTITUTIONAL LAW—*Title of Act—Single Object.*—The title of an act will be sufficient, within the meaning of Sec. 15, Art. V. of the Constitution, if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object expressed in the title. All that is required is that the subjects embraced in the statute, but not specified in the title, be congruous and have natural connection with or be germane to the subject expressed in the title. And the Constitution is to be liberally construed so as to uphold the law, if practicable.

3. CONSTITUTIONAL LAW—*Title of Act and of Amendatory Act.*—If an act of Assembly has been amended, it is unnecessary to enquire whether the title of the amendatory act would, of itself, be sufficient; it is enough if the title of the original act is sufficient to embrace the matters contained in the amendatory act.

4. CONSTITUTIONAL LAW—*Title of Act—Amendatory Act.*—Where a prior act of Assembly has been substantially incorporated into the Code, and some of these provisions of the Code are amended and re-enacted, others repealed, and new sections added to that chapter by a subsequent act of Assembly, the title of which refers to the numbers of the sections amended or repealed, and the number and subject of the chapter, and the amendment and new sections are germane to the title of the original act, the title of the amendatory act is a sufficient compliance with Sec. 15, Art. V. of the Constitution.

5. CONSTITUTIONAL LAW—*How Code Amended, Repealed, or Sections Added.*— Sec. 15, Art. V. of the Constitution of the State has no application to amendments of the Code ; and in amending and re-enacting or repealing any part of the Code or adding thereto, it is not necessary to do more (if so much) than refer to the proper chapter and section thereof to be amended, or repealed, or added to, and adopt and express in the title of the amendatory act the number and subject of such chapter, if the provision of such amendment by re-enactment or by additional section or sections is germane to the subject of the chapter.

6. CONSTITUTIONAL LAW—*Title of Act—Object of Tax—Amendatory.*—An amendatory act which merely *continues* a tax, which has been imposed by a previous act, without stating the object to which the tax is to be applied, is not repugnant to Sec. 16, Art. X. of the Constitution, if the original act which imposed the tax states the object to which it was to be applied. And this is true, although the amendatory act does not purport to amend the original act, but the Code into which the original act was incorporated.

7. CONSTITUTIONAL LAW—*Title of Act—Object of Tax.*—The title of an act which imposes a tax sufficiently defines the object to which the tax is to be applied, within the meaning of Sec. 16, Art. X. of the Constitution, when it declares it to be "to obtain revenue."

Error to a judgment of the County Court of Gloucester county, rendered on the 10th day of March, 1894, sustaining the defendant's demurrer to an indictment for failure to make a true and accurate return of sales of oysters made by him.

*Reversed.*

The opinion states the case.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

*J. N. Stubbs* and *Wm. C. L. Taliaferro*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

Section 5 of the Act of the General Assembly approved February 25, 1892, entitled "An Act to amend and re-enact sections 2131, 2133, 2134, 2135, 2137, 2148, 2151, 2153, and to repeal sections 2141, 2142, 2143, 2144, 2145 and 2147, of chapter 97 of the Code of Virginia in relation to oysters, and to add independent sections thereto" (Acts 1891-'92, chap. 363, p. 595), contains the following provision:

"The inspector shall require each tongman registered in his district to make to him, on the Saturday of each week, or within three days thereafter, during the lawful season, a true and accurate return of the amount of sales made by him during the week preceding; and the inspector shall collect from said tongman on the aggregate amount of sales for that week an amount equal to the amount of tax that may be levied by the State on any other species of property; but if at the time of registering his boat, any tongman shall prefer, and elect to pay, and pay to the inspector the sum of two dollars, the inspector shall give him a receipt therefor, in which he shall state that the said payment is a discharge of his obligation under this section for the entire season for which his boat is registered, so far as the weekly returns and the amount to be paid thereon is concerned. * * * If any tongman shall fail to make such report as is provided in this section, he shall be guilty of a misdemeanor, and upon conviction thereof he shall be fined not less than ten dollars, nor more than fifty dollars."

Iverson Brown, the defendant in error, who was a tongman of oysters, and had not elected, at the time of registering his boat, to pay to the inspector the sum of two dollars in dis-

charge of his obligation for the entire season, was indicted under the said statute in the County Court of Gloucester on the 5th day of October, 1893, for failing to make the return which was due from him to the inspector on the week ending September 16, 1893, or within the three days thereafter, of the amount of his sales of oysters.

To the indictment the defendant demurred. The court sustained the demurrer, and gave judgment for the defendant. Upon a petition by the Commonwealth to the judge of the Circuit Court of Gloucester county for a writ of error to the said judgment there was a *pro forma* refusal, in pursuance of an agreement between the attorney for the Commonwealth and for the defendant, in order that the case might be promptly brought before this court. A writ of error was thereupon granted by one of the judges of this court.

By an agreement in writing and filed with the record all errors and objections to the indictment, except as to the validity of the statute upon which it was based, were waived by the counsel for the defendant.

The only question, then, for our consideration is the constitutionality of the statute above quoted.

It is first assailed on the ground that the tax prescribed is not equal and uniform, and that, therefore, the statute is obnoxious to Section 1, Article X, of the Constitution. In support of this contention quite a number of objections to the act were urged.

Section 1, Article X. of the Constitution prescribes that: "Taxation, except as hereinafter provided, whether imposed by the State, county, or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value."

An inspection of the statute under consideration shows that the principle of equality and uniformity was strictly observed in the imposition of the tax. The value of the oysters for taxation could not well be ascertained or fixed in a more just manner than is prescribed by the statute. It is to be ascertained by the aggregate amount of sales each week during the oyster season. It is their actual value in market, and not merely their appraised value. A more accurate mode of ascertaining the valuation for taxation of oysters subject to be taxed could not well be devised; and the rate of taxation is precisely the same as is prescribed for other property. The inspector is to collect each week from a tongman, on the aggregate amount of his sales for that week, an amount equal to the amount of tax that may be levied by the State on any other species of property; no more, no less. The tax prescribed is exactly the same as that which is levied by the State on any other species of property, and the valuation is ascertained in the most accurate and just manner. There is no just ground to complain of the tax for inequality or want of uniformity.

It is objected that the valuation for taxation of oysters is not ascertained in the same way, or by the same method, that is prescribed for other property; that the valuation of other property is assessed by officers elected or appointed for the purpose; that the tax on oysters is to be assessed and paid weekly, while all other property is only assessed annually, and the tax paid annually; and that the failure of a tongman to make weekly a return of his sales to the inspector is made a misdemeanor, and subjects him, on conviction, to the payment of a fine, while the owners of other property subject to taxation are not liable to be punished for a like delinquency.

Neither one nor all of these objections affect the equality or uniformity of the tax imposed on a tongman, nor offend against Section 1, Article X. of the Constitution. Whether true or

false, they do not operate to impose any greater burden on him than is borne by the owner of any other species of property of the same value. They do not add one iota to the tax he has to pay, and the statute is therefore in strict accord with both the letter and spirit of the Constitution in the respect complained of.

The Constitution does not prescribe that the valuation of all property for taxation shall be ascertained in the same way or manner. It is not even implied. In the nature of things, it could not be done. The many kinds or species of property with their diverse characteristics render it impossible. The valuation is to be ascertained as prescribed by law—that is, by the legislature—and in as just a manner as possible; and on such valuation the same rate of tax shall be imposed as on other property, so that "no species of property * * * shall be taxed higher than any other species of property of equal value." The requirement of equality and uniformity is satisfied by such regulations as will secure an equal rate and a just valuation, without reference to the method of valuation, and, in order to be uniform, a tax need not be imposed and assessed upon all property by the same agency or officer. *Shenandoah Val. R. Co.* v. *Supervisors of Clark Co.*, 78 Va. 269; *Kentucky Railroad Tax Cases*, 115 U. S. 337, 338; *Central Iowa Ry. Co.* v. *Board of Sup'rs*, 67 Iowa 199; and *Louisville & N. A. R. Co.* v. *State*, 25 Ind. 177. The legislature may prescribe any method it may deem best for attaining a just and fair valuation of any species of property, and the court could not declare any such law void, unless it manifestly violated the principles required by the Constitution.

The fact that oysters are required to be assessed, and the tax to be paid every week, while other property is only assessed and the tax paid once a year, does not work inequality in the amount of the tax paid. The tongman does not pay weekly on the same property. In the result, he only pays on

the aggregate amount of his sales during the season the regular *pro rata* tax that is paid on all other property. The fact that he pays the tax in weekly installments, instead of one annual payment, does not increase the amount of his tax one cent. The amount to be paid to the State is precisely the same, whether paid in one single payment or in weekly installments.

It is claimed that the tax in question, being assessed on the aggregate amount of sales of oysters, is an income tax, and is, therefore, violative of Section 4, Article X. of the Constitution, which exempts incomes under $600 from taxation. It is a sufficient answer to this objection to say, that the tax is assessed on *sales*, and not upon *income*, and that the section of the Constitution referred to has no application to the case; and, furthermore, that the tax on the "amount of sales of oysters" taken from their natural beds is expressly authorized by Section 2 of the said article of the Constitution.

It is further objected that, because the act subjects a tongman to a fine of not less than $10 nor more than $50, if he fail to make to the inspector the required weekly return of sales, it discriminates against the tongman, as no other owner of property subject to taxation is liable to a fine for a like delinquency. If this were in fact true, it would not be cause to declare the statute void for inequality or want of uniformity in the tax imposed on tongmen of oysters. It in no wise adds to or increases the tax. That remains fixed, and is the same that is "levied by the State on any other species of property." If the tongmen respect the law by which the valuation of oysters for assessment is to be ascertained, they will never incur the fine. A statute that is otherwise valid is not rendered invalid by having a penalty affixed for its violation. The wrong of the citizen can never make a valid law void. But the claim of discrimination is not founded in fact. Owners of other property are subject to punishment for a like delin-

quency.   The penalty prescribed by the statute in question is for failing to make the return of sales to the inspector, who is to assess the tax.    Under the general law, forms for lists of valuations are furnished by the assessor to the owners of personal property, which they are required to fill out by listing their property and affixing valuations thereof, and which, after being verified by oath, are required to be returned to the assessor or clerk of the court within ten days thereafter; and the failure to return the same within the time required, and to make oath to its truth and fairness, subjects the offender to a forfeiture of not less than $30 nor more than $1,000. Code of Va., sections 491, 494, 497.

Statutes imposing penalties for failure or refusal to make such returns or to return such lists are quite common, and have been uniformly upheld.    *Washington* v. *Commonwealth*, 2 Va. Cas. 258; *Commonwealth* v. *Byrne*, 20 Gratt. 165; *State* v. *Bell*, 1 Phil. (N. C.) 76; *Commonwealth* v. *Cooke*, 50 Pa. St. 201; *City of Hartford* v. *Champion*, 58 Conn. 268, and 25 Am. & Eng. Enc. Law, 206.

Nor does the statute infringe in the least on the provision of the Constitution which authorizes a tax to be imposed on "the amount of sales of oysters" taken from the natural beds by any citizen "in any one year    *    *    *    at a rate not exceeding the rate of taxation imposed on any other species of property."    Article X., section 2.    It imposes, as has been seen, a tax on the weekly sales of oysters equal to the amount of the tax that may be levied by the State on any other species of property; but provides that "if at the time of registering his boat any tongman shall prefer and elect to pay, and pay to the inspector the sum of two dollars, the inspector shall give him a receipt therefor in which he shall state that the said payment is in discharge of his obligation under this section for the entire season for which his boat is registered, so far as the weekly returns and the amount to be paid thereon

is concerned." It is insisted that this is in substance and effect a license tax, and not a property tax, and is therefore obnoxious to Section 2, Article X. of the Constitution. This claim is not well founded. The Constitution expressly authorizes the legislature to impose a tax on the amount of sales of oysters taken from their natural beds by any citizen in any one year, but limits the tax to the rate imposed upon any other species of property. The statute, pursuing directly the constitutional provision, requires a tongman to make return to the inspector of the amount of his sales of oysters so taken, and the inspector to collect from the tongman on the aggregate amount of sales an amount equal to the amount of tax levied by the State on other property. Thus the tongman is required to pay on the amount of his sales as the Constitution authorizes, and not otherwise; and only such amount as is equal to the tax imposed by the State on other property. The statute does not, therefore, offend against the Constitution, and it is difficult to see how it can be so claimed.

The provision that if the tongman, at the time of registering his boat, shall prefer and elect to pay, and pay the sum of two dollars, such payment shall be a discharge of his obligation for the entire season for the tax imposed on the amount of his sales, is simply a privilege extended to him, which he may either accept or decline. He is under no compulsion whatever to avail himself of it. He is without cause of complaint on this score. Nor, unless accepted, does it affect the tax imposed in strict adherence to the constitutional provision.

We have now disposed of the many objections raised to the constitutionality of the statute on the ground of inequality or want of uniformity in the tax it imposes, and the objection that it is a license, and not a property tax. It is, in our opinion, valid against such attack.

It is next contended, that it is repugnant to Section 15,

Article V. of the Constitution, which is as follows: "No law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended with reference to its title, but the act revived, or the section amended, shall be re-enacted and published at length."

The title of the act was stated at the beginning of this opinion, but for convenience in examining the objection made to its validity or sufficiency under the foregoing provision of the Constitution, it will be here repeated.   It is entitled: "An act to amend and re-enact sections 2131, 2133, 2134, 2135, 2137, 2148, 2151, 2153, and to repeal sections 2141, 2142, 2143, 2144, 2145, and 2147 of chapter 97 of the Code of Virginia, in relation to oysters, and to add independent sections thereto."

It is claimed that the body of the statute embraces many objects, instead of one object, as required by the constitutional provision, and, further, that these many objects are not expressed in the title; that it both amends and repeals many sections of the Code, and that the independent sections have various objects, such as registering boats to be used in taking oysters from their natural beds, arranging oyster districts, surveying oyster-planting grounds, assigning and renting oyster grounds, tax on sales of oysters taken from their natural beds, and other similar provisions; and it is contended that "the title should have stated and shown what subject each section as amended and re-enacted had reference to, what subject each section repealed had reference to, and that the subject-matter in the independent sections should have been clearly set forth in the title."

The provision of the Constitution is a wise and wholesome one.   Its purpose is apparent.   It was to prevent the members of the legislature and the people from being misled by the title of a law.   It was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the

practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation.

And, on the other hand, it was not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law upon one general subject. It was not designed to embarrass legislation by compelling the multiplication of laws by the passage of separate acts on a single subject. Although the act or statute authorizes many things of a diverse nature to be done, the title will be sufficient if the things authorized may be fairly regarded as in furtherance of the object expressed in the title. It is therefore to be liberally construed and treated, so as to uphold the law, if practicable. Cooley, Const. Lim., p. 175. All that is required by the constitutional provision is that the subjects embraced in the statute, but not specified in the title, are congruous, and have natural connection with, or are germane to, the subject expressed in the title. This has been, so far as we are aware, the construction given this provision of the Constitution by this court, by the highest courts of other States whose constitutions contain the same or a similar provision, and by the Supreme Court of the United States. *Powell* v. *Supervisors*, 88 Va. 707; *Lescallett* v. *Com.*, 89 Va. 878; *State* v. *Town of Union*, 33 N. J. Law 350; *People* v. *Briggs*, 50 N. Y. 553; *Johnson* v. *Harrison*, 47 Minn. 578; *Falconer* v. *Robinson*, 46 Ala. 347; *Carter Co.* v. *Sinton*, 120 U. S. 523; *Montclair* v. *Ramsdell*, 107 U. S. 155; *Ackley School Dist.* v. *Hall*, 113 U. S. 142; and *Unity* v. *Burrage*, 103 U. S. 457-459.

It is very plain that the subjects of the various sections of the act under consideration are not dissimilar or discordant, but have natural connection with each other, and relate to

the general subject (oysters) expressed in the title.   They are all the means to an end.   They are instrumentalities for the accomplishment of the general object of the act.   No one interested in the subject-matter of the statute could be misled by the title, or be put off his guard by hearing it read by the title.   Under the just and fair interpretation that has been uniformly given to the provision of Section 15, Article V. of the Constitution, the title to the act in question is sufficient, and it was unnecessary to set forth in it the various subjects of its different sections, which would have, indeed, made the title, what the constitutional provision never intended to require, an abstract of the law or an index of its contents.

There is another view which may be urged in support of the sufficiency of the title.   It will be observed that it is an amendatory act, and not the original act on the subject.   In such case, if the title of the original act is sufficient to embrace the matters covered by the provisions of the act amendatory thereof, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient.   If the title of the original act is sufficient to embrace the matters contained in the amendatory act, whether that of the amendatory act is in itself sufficient is unimportant.   *State* v. *Ranson,* 73 Mo. 78; *City of St. Louis* v. *Tiefel,* 42 Mo. 590; *Brandon* v. *State,* 16 Ind. 197; *Monford* v. *Unger,* 8 Iowa 82; *State* v. *Algood,* 87 Tenn. 163; and *Yellow River Improvement Co.* v. *Arnold,* 46 Wis. 214, 224.

The act in question is amendatory of chapter 97 of the Code of Virginia, on "Oysters."   This chapter contains and embraces the statute law on the subject of oysters enacted in Acts 1883-'84, chap. 254, p. 324, as revised by the revisors of that Code; and the section under which the defendant in error was indicted was in substance contained in section 8 of said act, and was incorporated in the Code as section 2142.   That section of the Code is repealed by Acts 1891-'92, chap. 363, p.

595, and section 5 enacted in its place as an independent section. We have already set forth the said section at length. Is it germane to the subject expressed in the title of the act of 1883–'84 referred to? Would it have been legitimately covered by its title? The title was as follows: "An act for the preservation of oysters and to obtain revenue for the privilege of taking them within the waters of the Commonwealth." These questions can only be answered in the affirmative. Section 2142 of the Code, taken from the original act of 1883-'84, and incorporated into the Code by the revisors, and the independent section under discussion, numbered 5, of the act of 1891-'92, relate directly and expressly to the object expressed in the title of the original act. This cannot be questioned. And, being fully covered by it, the title of the amendatory act of 1891-'92 is a sufficient compliance with the constitutional requirement.

It may, however, be said that the act in question did not purport to amend the original act of 1883-'84, but to amend and re-enact and repeal various sections of chapter 97 of the Code of Virginia, and add other sections to it. This is true, and it is also true that the revisors of the Code (1887) incorporated into it the provisions of the act of 1883-'84, and that the sections so amended and re-enacted and those repealed were mainly taken by the revisors from the said act.

But the fact that the act purports to amend the Code instead of the original act, so far from invalidating it, is an additional reason why it is not obnoxious to the Constitution in respect to the matter of its title. The laws contained in the present Code were enacted before, and the great body of them very long before, they were incorporated into it. They were taken from previous Codes and compilations of the general laws, and from statutes passed subsequent to such Codes and compilations. It is to be presumed that they were constitutionally enacted as well as to the title as in

other respects.    They were collated, revised  and digested under appropriate titles and chapters, and divided into sections in pursuance of an act of the legislature, and then passed by it as one act under a proper title with the object of the act therein duly expressed: "An act to revise, arrange, and consolidate into a Code the general statutes of the Commonwealth, approved May 16, 1887," in strict compliance with the Constitution.

It was not to amendments of general statutes thus consolidated into a Code that Section 15 of Article V. of the Constitution was intended to apply, but it was aimed at the separate acts in their original enactment, when the opportunity existed for the evils and the mischief to be done, which the constitutional provision was designed to prevent or defeat.    It is not necessary, therefore, to do more, if so much, in amending and re-enacting or repealing any part of the Code or adding thereto, than refer to the proper chapter and section thereof to be amended or repealed or added to, and adopt and express in the title of the amendatory act the number and subject of such chapter, if the provision of such amendment by re-enactment or by additional section or sections is germane to the subject of the chapter.    *Second German Building Association* v. *Newman*, 50 Md. 62; *Lankford* v. *Commissioners*, 73 Md. 105; *Heath* v. *Johnson*, 36 W. Va. 782; *Dogge* v. *State*, 17 Neb. 140; *State* v. *Berka*, 20 Neb. 375; *People* v. *Howard*, 73 Mich. 10; and *People* v. *Parvin*, (Cal.), 14 Pac. 783.

The chapter of the Code whose sections are affected by the act in question is numbered 97, and "Oysters" is expressed to be its subject.    The act whose constitutionality is questioned refers in its title to that chapter by number, and uses its title; and, as we have previously shown, the provisions of all the sections of the act relate directly and expressly to the

subject "Oysters." It is not, therefore, in conflict with the Constitution.

The Constitution of Maryland contains a similar provision to that of our own, and the Court of Appeals of that State has held that in amending its Code of laws, which is divided into Articles, it is sufficient to refer to the number of the Article. The subject of its ninety-fifth Article is "Usury," under which is contained the whole legislation of the State regulating the rate of interest, declaring the penalties and forfeitures for usury, and prescribing the manner in which such forfeitures shall be enforced. The legislature of Maryland passed an act amending the said Article, under the title: "An act to amend Article ninety-five of the Code of Public General Laws by adding an additional section thereto." Laws 1876, p. 601.

In *Second German Building Association* v. *Newman, supra,* the act was assailed as repugnant to the Constitution, but the court held that the title of the act complied with the constitutional provision requiring the *subject* of an act of Assembly to be described in its title; and added that "it was not necessary to state in the title that the section to be added to the Code related to the subject of usury. The reference to the particular Article in the Code, which relates only to the subject of usury, clearly indicated the subject of the law."

The act drawn in question in *Heath* v. *Johnson, supra,* was entitled "An act to amend 'an act to amend and re-enact section 58 of chapter 45 of the Code of West Virginia.'" It was objected to, on account of the insufficiency of its title, but the court held otherwise, and said: "The provision cited seems to refer rather to original acts than to those which are only amendatory; but, supposing it to apply to the latter, when the amendment in its title points not only to the chapter which is to be amended, but to the very section, it seems to us to amount to a sufficient expression of the object of the

law to prevent any of the evils which the constitutional provision was intended to remedy.''

The title of the act which was questioned in *People* v. *Howard, supra,* reads as follows: ''An act to amend chapter 153 of the Revised Statutes of 1846, being chapter 180 of the Compiled Laws, entitled 'of offenses against the lives and property of individuals.' '' Laws 1867, p. 153. The amendment consisted in adding to the chapter a new section. In its opinion the court said: ''It is claimed that the object of the act, which was to create a new felony, is not expressed in the title; that an amendment means a change or alteration in something already existing, and does not mean creation, or the bringing in of substantially new matter; and that the precise purpose of the act should have been clearly stated in the title. * * * Acts entitled 'Acts to amend a named act' are not obnoxious to the Constitution, if the amendment comes fairly within the scope of the title of the original act. Nor would the amendment of a compiler's section, if the subject-matter of the section was expressed in the title. But it is said that the chapters and sections of the Compiled Laws have no titles, the titles being placed there by the compilers, and not by the legislature. * * * When the chapters are referred to, and they are identical in sections, and the title as used by the compiler is substantially stated, and an amendment is proposed to such chapter, the public are notified that a change is proposed in the law relating to the class of offenses treated of in such chapters, and that amendments may always be made by adding a new section, as an act is amended by adding a new section.''

It is further contended, that the act is unconstitutional because it imposes a tax without stating the tax, or the object of it, and is therefore repugnant to Section 16, Article X. of the Constitution, which provides that ''every law which imposes, continues, or revives a tax, shall distinctly state the tax

and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object."

So far as we are aware, this particular provision of the Constitution has not heretofore been reviewed by this court. It was not in any Constitution of the State prior to 1869. It appears there for the first time.

It is true that the act contains a tax. Is it distinctly stated? It is prescribed to be "an amount equal to the amount of tax that may be levied by the State on any other species of property." It is made exactly the same as that which is imposed on other property. Tongmen are required to pay the same tax on the fair value of the oysters taken and sold by them that is paid by others on other property of the same value. The tax is accurately prescribed. It is not open to mistake or doubt. It is, in the sense of the Constitution, distinctly stated. The act specifically and definitely fixes the amount of the tax, and in this respect complies with the letter and purpose of the constitutional provision.

Next, as to the object of the tax. It is claimed that this is new legislation, and not an amendment of a former law, but the enactment of a new section, and that, therefore, it *imposes* a tax. But this is a mistake. It does not impose a new tax. It simply continues a tax already existing and in force when the act was passed. The very act which prescribes the tax repeals a section of the Code taken from the act of 1883-'84 (chapter 254, § 8), which fixed the same tax. It is simply the substitution by the same act of another section for the original section, both containing the same tax. The act, therefore, instead of *imposing* a tax, simply *continues* it.

We have already seen, in discussing the objection to the title of the act, that where an act is amendatory of an original act, and the title of the original act is sufficient to cover the matter of the amendment, it is sufficient, and the title of the amendatory act becomes unimportant. For the same

reason, where an amendatory act merely *continues* a tax with
out stating the object to which it is to be applied, it will be a
compliance with the constitutional provision if the original
act which imposed the tax states the object to which it was
to be applied.

Under the Constitution, the title is a necessary part of
every statute. The tax which the act in question continues
was imposed by the act of 1883-'84. We have only to refer
to that act to find a satisfactory answer to the constitutional
objection now urged. It is entitled "An act for the preser-
vation of oysters and to obtain revenue for the privilege of
taking them within the waters of the Commonwealth." The
object of the tax is concisely but expressly stated. It is "to
obtain revenue." What is "revenue?" It is the income which
a State collects and receives into its treasury, and is appro-
priated for the payment of its expenses. The object of the
act, then, was to raise money for the support of the govern-
ment of the State. It is concisely defined by the words to
"obtain revenue," but by that phrase the object of the tax is
as popularly understood as if it had been declared in the title
or body of the act that the object was to raise money for the
current expenses of the Government.

While the act of 1891-'92 does not purport to amend the
act of 1883-'84, but the Code, yet it is that act as put into the
Code which is in reality amended. It cannot be necessary,
in an amendment which continues a tax contained in the
original act without changing the object of the tax, to repeat
the object. The statement of it in the original act is sufficient.

It appears from section 2135 of chapter 97 of the Code,
where the act of 1883-'84 was incorporated into it, that each
inspector of oysters is required to pay all taxes on sales of
oysters, together with all fees and fines collected by him,
"into the public treasury, to the credit of the oyster fund."
This section, as amended and re-enacted by the act of 1891-

'92, uses the same language. The "oyster fund" here referred to is merely an account that shows upon the credit side the amount of taxes, rents, fees, and fines derived from oysters, and upon the debit side the expenses incurred in sustaining the means furnished by law for their preservation and obtaining revenue from them. It is simply kept for the information of the Executive of the State, the General Assembly, and the public, in order that it may be conveniently seen whether oysters are a source of revenue to the State, and, if so, to what extent. It has no reference to the object of the tax, and in no wise alters or affects its object as expressed in the title of the act of 1883-'84, or diverts the moneys received under the tax from the payment of the ordinary and current expenses of the State.

The tax is distinctly stated in the act. And there can be no misunderstanding or doubt as to the object to which it is to be applied. The law is valid.

The constitution of New York contains the same provision in the same identical words. It has been construed more than once by the courts of that State, and liberally interpreted.

It came before the Supreme Court of New York in *People* v. *Supervisors of Orange Co.*, 27 Barb. 575, where the act prescribed that the money raised should be "paid into the treasury of the State, to the credit of the general fund." It was objected that this was not a sufficient statement of the object to which the tax was to be applied, as required by the Constitution, but the court held otherwise, and declared the act valid. An appeal was taken to the Court of Appeals of New York, which affirmed the judgment of the Supreme Court. Id., 17 N. Y. 235.

It was again before the Supreme Court of New York in the case of *People* v. *National Fire Insurance Co.*, 27 Hun, 188, where the act specified that the taxes "shall be applicable to

the payment of the ordinary and current expenses cf the State.''
It was held that this sufficiently stated the object of the tax.

These decisions show that under a reasonable and fair inter-
pretation of this provision of the Constitution it is sufficient
to indicate generally the purpose to which the tax is to be
applied; otherwise it would be necessary, after having stated
the tax, and the fund to which, when collected and paid into
the treasury, it is to be credited, to go further, and specify
the persons to whom, and the purposes for. which, it should
be disbursed.   It was well said by the court, in one of the
cases. cited above, that if this were necessary, ''every tax bill
would then be an appropriation bill also''—a requirement that
would be of infinite embarrassment to the Government, and
practically deprive the legislature of all power to raise money
by taxation.

Every law enacted by the legislature is presumed to be in
conformity with the Constitution, until the contrary is shown,
and it devolves on him who alleges its invalidity to show it.
It is a grave responsibility for a court or judge to pronounce
a solemn and deliberate act of the sovereign law-making power
unconstitutional and void.   It should never be done in a
doubtful case, and especially where no great principle of
liberty or the security of property ''enshrined in the. Consti-
tution of the United States and repeated in that of the State''
is involved, but only some rule of legislative action.   When
it is done, the conflict between the Constitution and the law
must be clear and palpable.   To doubt is to affirm the validity
of the law.   The statute, which has been assailed on so many
constitutional grounds, is not, at least to our minds, in plain
and palpable conflict with the Constitution.

The result is, that the judgment of the County Court of
Gloucester county must be reversed and annulled, and the de-
murrer to the indictment overruled.

REVERSED.