DAVIS *v*. PHIPPS.

4-4006

Opinion delivered September 23, 1935.

*John L. Carter*, for appellant.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

BAKER, J. This suit, filed by C. D. Davis, as a citizen and taxpayer, against W. E. Phipps, as Commissioner of Education, is to enjoin the issuance of bonds by the State Board of Education. The effect of the suit is such that it challenges the legality of a proposed bond issue under act No. 333, which became a law upon the 4th day of April, 1935, having remained with the Governor for twenty days after the adjournment of the General Assembly, without approval or veto.

Act No. 333, if legal, is a grant of power to the State Board of Education, by which it is authorized to sell from time to time, and in such amounts as it may deem advisable, bonds in addition to those now authorized by law, to be known as revolving loan school bonds, to mature on such basis as the State Board of Education may determine, and to make a physical pledge to secure such bonds in such form as it sees fit of any school district bonds in the State Treasury, on which loans were

made from the revolving loan fund. The State Board of Education was granted power to execute a pledge by deed of trust, and by depositing the school district bonds in any bank or other safe place designated by the State Board of Education, and to designate a trustee for said pledge or deed of trust, who should have power to sell any of said pledged bonds, should there be a default of the payment of principal or interest on the bonds authorized to be issued under § 1 of said act 333.

The State Board of Education passed a resolution on June 10, 1935, pursuant to the authority granted, to issue $20,000 of revolving loan school bonds, as authorized, of the denomination of $1,000 each, and bearing interest at the rate of not exceeding six per cent. per annum, one bond to be payable on the first day of January, beginning with the year of 1936, and one bond of $1,000 payable each year thereafter until the said $20,000 shall have been repaid. The said resolution especially provided that said bonds should be issued and executed in the name of the State Board of Education, by its chairman, attested by the seal of the State Board, and that, as security for the payment thereof, there should be pledged in form a deed of trust, to be adopted by the State Board of Education, of which the Commercial National Bank of Little Rock was made trustee, with proper provisions for the sale of the pledged bonds, given as security, for payment of principal and interest of the said revolving loan school bonds.

To this suit filed by the appellant herein seeking to enjoin the issuance of the aforesaid bonds, the defendants demurred. The demurrer upon hearing was sustained, and, plaintiff refusing to plead further, the complaint was dismissed. The appeal comes to this court challenging this action of the chancery court of Pulaski County.

It is urged upon this appeal that act 333 of the Acts of 1935 violates Amendment No. 20 to the Constitution of Arkansas. Amendment No. 20 was adopted at the general election in November, 1934, and provides as follows: "Except for the purpose of refunding the exist-

ing outstanding indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State of Arkansas shall issue no bonds or other evidences of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or a special election called for that purpose.''

The resolution adopted by the State Board of Education especially provides that the revolving loan school bonds shall not pledge the faith and credit of the State of Arkansas for their payment, but they shall be payable only from the proceeds of the bonds pledged as security therefor.

It must appear, even to the casual reader, that the question raised is whether these bonds may be issued and sold, ''except by and with the consent of a majority of the qualified electors of the State voting on the question at a general election, or a special election, called for that purpose,'' as provided in Amendment No. 20.

It must be equally apparent that the bonds could not be issued and sold except when authorized by such election as bonds issued by the State of Arkansas, if the faith and credit of the State, or any of its revenues were pledged to secure the payment thereof.

It must be seen from the foregoing statement that said bonds do not purport to be State bonds, in the sense ordinarily implied by the use of such term. They purport to be issued only as revolving loan school bonds, issued by the State Board of Education. There is an express provision of act No. 333 that the faith and credit of the State shall not be pledged.

Do these bonds, as above described, come within the inhibition of this constitutional amendment.

If the answer to this question is such that the bonds must be decided to be direct obligations of the State, and for the payment of which the State must at all events be finally bound, we would not hesitate in determining that the bonds could not be legally issued, in the face of the provisions of Amendment No. 20 aforesaid.

As stated above, they do not purport to be obligations of the State. They are issued by the State Board of Education to secure money for the revolving loan fund. There is no authority to bind the State for their payment in any respect or particular. Bonds must be paid out of the proceeds arising from the pledged securities. There is no other method or provision for the repayment of such funds as may be borrowed upon these bonds. No holder of said bonds can in good faith, at any time, legally assert any claim against the State for their payment, upon default of the security pledged therefor. They are not, in fact, State bonds.

The remaining question to be decided is one that has given us much more concern.

Amendment No. 20 provides that the State of Arkansas shall issue no bonds, or other evidences of indebtedness, pledging any of the revenues of the State, except when authorized by a majority vote of the qualified electors of the State. If the securities pledged for the payment of these bonds, which the State Board of Education desires to issue, may be deemed revenues of the State of Arkansas, then it is doubtful if such security could be legally pledged.

There should not be very much difficulty in a proper understanding and interpretation of what is meant by the language of Amendment No. 20, which prohibits the pledging of the State's revenues. Citizens of the State who have been interested in its welfare and who have attempted to keep themselves reasonably well-informed know what the evils were for which Amendment No. 20 was framed to cure. It must be a fact well recognized in State history that, at the time Amendment No. 20 was being considered by the electors of the State, the financial affairs of our Commonwealth had been well-nigh wrecked by issuance of bonds far in excess of the amount justified by the liquid resources of the State. High taxes had been imposed to raise revenues to meet these enormous obligations. It was well understood then, as it is now, that a continuation of these practices that had grown up were pyramiding debts and tapping every

source of revenue for payment thereof and could not continue without practical bankruptcy.

It was well understood, of course, that these matters do not appear from anything that may be connected with Amendment No. 20, nor is the language used therein such as to justify any such conclusion, but such conclusions as have been announced above, as are well known and recognized, may be considered in a proper interpretation of the amendment, to aid us in understanding its purposes in curing the evils then prevalent. However, in recognizing these conditions as an aid in the interpretation of the meaning of the language used, we are in no sense justified in violating the express terms or provisions of the amendment. But to follow the strict language of the amendment, without regard to the purposes of it, which are well known and recognized, would be as erroneous on the one hand in the rendition of an interpretation, as it would be to interpret wholly from recognized purposes and conditions, without regard to the language used in framing the amendment.

When we refer to the revenues of the State, we usually mean the annual or periodic yield of taxes, excises, customs, etc., which the State collects and receives into the treasury for public use, but the word "revenues" may be much broader than that, as it may include rent, yield, as of land, profit. It includes annual and periodical rent, profits, interest, or issues of any species of property, real or personal, income. The yield from taxes is one of the last meanings given in Webster's International Dictionary, yet it is the one with which we have most to do in questions such as are presented here.

It must be remembered that the bonds pledged in this case as security were bonds issued by school districts delivered to the State Board of Education as security for money obtained from the revolving loan fund. This is not, in fact, strictly a part of the State's revenues, as distinguished from school funds. It is a part of the assets belonging to this revolving loan fund, but is, for practical purposes, as distinct from the State as are school districts, or improvement districts, about

which no question is ever raised as to their individual entity, as distinguished from the State. These school districts and improvement districts are in some senses, at least, merely agencies of the State, organized under proper authority to render a certain service to particular localities.

The revolving loan fund is not confined to any individual locality, but is limited to a particular and individual purpose, designed to render a service not otherwise provided for.

If, by a strained construction, we should say that these funds in the hands of the State Board of Education are funds of the State, we can with the same parity of reasoning say that the State Board of Education, through the revolving loan fund, shall not issue any bonds, because it is only an agency of the State, and, by the same process of deduction, if we hold one agency of the State without power or authority, we may in like manner hold all other agencies of the State, as school districts and improvement districts, impotent in borrowing money or issuing bonds.

But, aside from further speculation, we may say that Amendment No. 20 prohibits bonds or instruments issued by the State itself for the security of which is pledged the State's faith and credit. A bond is a written promise to pay money, and we have said, in the foregoing discussion, that the State is not issuing these bonds, and it would not be bound for their payment. Therefore these bonds, which the State Board of Education is about to issue, are not within the prohibited class.

In the second proposition our conclusions are not without quite eminent authority to the effect that revenues mentioned in Amendment No. 20 as revenues of the State do not include the securities pledged with the State Board of Education, nor the interest derived from those securities. An imposing array of authorities showing the distinction between revenues collected by the State for its support and maintenance, and those collected by State agencies or subdivisions, could easily be cited. A few, however, should suffice.

"The word 'revenue' as used in the act has been construed by the Supreme Court to 'embrace public revenue, whether State or municipal—it embraces all taxes and assessments imposed by public authority.'" *Gunning* v. *People,* 76 Ill. App. Ct. 574.

Again in a Missouri case, it was held that a fund accumulated by a college from tuition charges and used for payment of insurance on the college buildings was no part of the State revenue, nor was insurance collected such, though the school was a State school. *State* v. *Board of Regents for Northeast Missouri State Teachers' College,* 305 Mo. 57, 264 S. W. 699.

A definition of revenue is given in the case of *Commonwealth* v. *Brown,* 91 Va. 762, 21 S. E. 357: "It is the income which a State collects and receives into its treasury, and is appropriated for the payment of its expenses."

Also in *Welch* v. *Hotchkiss,* 39 Conn. 140, 12 Am. Rep. 383, and *United States* v. *Wright,* 28 Fed. Cases, 789.

Finally, it may be suggested that the pledges contemplated by the State Board of Education are not within the forbidden class for another reason; that is, under Amendment No. 20 it would seem that pledges of revenue are forbidden only when such pledges are to secure State bonds. This seems to be in accordance with the language of Amendment No. 20.

It must follow that the chancellor's decision was correct. It is therefore affirmed.