The Honorable Steven D. Bright State Representative 177 Southshore Drive Maumelle, Arkansas 72113-5810
Dear Representative Bright:
I am writing in response to your request for an opinion on the following question:
 Can the State of Arkansas issue a Promissory Note or a Bank Guarantee, backed by the assets of the State, for collateral to fund any legal project for improvement of the infrastructure of the State? If yes, is the State constitutionally bound to refer the question to the people for a ballot vote?
RESPONSE
It is impossible to answer your question in any meaningful way without reference to all the facts of a particular transaction and any pertinent enabling legislation authorizing the same. For example, you have not indicated to whom a promissory note or a "bank guarantee" would be issued, what type of "assets" would secure the note or guarantee or the nature or ownership of any infrastructure that would be funded thereby. It is impossible therefore to respond to your question in any concrete way. I can set out, however, a number of constitutional provisions that may constrain the power of the General Assembly or the State in this regard.
There are several provisions of the Arkansas Constitution that may, depending upon the facts of the transaction, restrain the State from taking the action you suggest. As an initial matter, Article 16, § 1 must be considered. It provides in pertinent part that:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever . . . and the State shall never issue any interest-bearing treasury warrants or scrip.
If your question inquires as to whether the State could somehow issue interest bearing treasury warrants or "scrip," in my opinion that action would be unconstitutional. In addition, a promissory note or a "bank guarantee" issued by the state to guarantee the debt of a corporation or individual may also be unconstitutional under Article 16, § 1 as lending the credit of the state.
Other constitutional provisions that merit attention are Article 12, § 7, which prohibits the State from becoming a stockholder or subscribing to or being interested in the stock of any corporation or association and Article 12, § 12, which prohibits the State from assuming or paying the debt of liability of any county, town, city or other corporation whatever unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense.
Amendment 20 of the Arkansas Constitution must also be considered and it also speaks to your second question concerning the necessity of a public vote. Amendment 20, adopted in 1934, provides as follows:
 Bonds prohibited except when approved by majority vote of electors. — Except for the purpose of refunding the existing outstanding indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State of Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose.
 This Amendment to the Constitution of Arkansas shall be self-executing and require no enabling act, but shall take and have full force and effect immediately upon its adoption by the electors of the State.
(Emphasis added).
The purpose behind this provision has been recounted by the Arkansas Supreme Court as follows:
 It was a sad economic condition that caused the enactment of Amendment 20. See Davis v. Phipps, 191 Ark. 298, 85 S.W.2d 1020 (1935), where we said:
 "Citizens of the State who have been interested in its welfare and who have attempted to keep themselves reasonably well-informed know what the evils were for which Amendment No. 20 was framed to cure. It must be a fact well recognized in State history that, at the time Amendment No. 20 was being considered by the electors of the State, the financial affairs of our Commonwealth had been well-nigh wrecked by issuance of bonds far in excess of the amount justified by the liquid resources of the State. High taxes had been imposed to raise revenues to meet these enormous obligations. It was well understood then, as it is now, that a continuation of these practices that had grown up were pyramiding debts and tapping every source of revenue for payment thereof and could not continue without practical bankruptcy."
Borchert v. Scott, 248 Ark. 1041, 1048, 460 S.W.2d 28 (1970), quotingDavis v. Phipps, 191 Ark. 298, 301-302, 85 S.W.2d 1020 (1935).
Your question assumes a promissory note or a "bank guarantee" issued by the State. These types of instruments may, depending upon the facts, be classified as "evidence[s] of indebtedness" for purposes of Amendment 20 above. To the extent, therefore, that the instruments you describe would pledge the full faith and credit of the state or "any of its revenues," execution of such an instrument would require a favorable vote of the electorate under Amendment 20.[1]
Again, however, a review of all the facts surrounding the transaction would be necessary in order to determine compliance with the Arkansas Constitution. As my predecessor stated in Op. Att'y. Gen. 2001-109:
 [Amendment 20] must be read in conjunction with Ark. Const. amend. 65, which authorizes the issuance of revenue bonds without a vote of the people.
* * *
 Amendment 20 prohibits the state from pledging its faith and credit or revenues to repay a loan without voter approval. Amendment 65 provides that "any governmental unit" may issue "revenue bonds" — instruments not secured by the faith and credit or tax revenues of the state — to finance capital improvements with or without voter approval.
Id. at 2.
My predecessor noted the expansive definition of the term "revenue bonds" in Amendment 65, which includes:
 . . . all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for local improvements and taxes) derived from the project or improvements financed in whole or in part by such bonds, notes, certificates or other instruments or evidences of indebtedness, from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes.
Id, quoting Amendment 65, § 3 (a).
If the promissory note or "bank guarantee" to which your refer is "backed" by one or more of the sources of revenue listed above and not by assessments for local improvements and taxes, it is possible that an election would not be necessary to authorize its execution.
Finally, any promissory note or "bank guarantee" must be issued in furtherance of a "public purpose." See generally, Pulaski County v.Jacuzzi Brothers Division, 332 Ark. 91, 964 S.W.2d 788 (1998); City ofHot Springs v. Creviston, 288 Ark. 286, 705 S.W.2d 415 (1986); andChandler v. Board of Trustees of the Teacher Retirement System,236 Ark. 256, 365 S.W.2d 447 (1963). Again, the facts surrounding the transaction will determine the applicable legal principles and the constitutionality of the instruments in question.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] I must decline to address any potential impact of proposed Constitutional Amendment 2, which is scheduled to appear on the November 2, 2004 general election ballot. It has not at this date been adopted by the people and the interpretation of such proposed measures is not appropriate in the format of an official Attorney General opinion. See
Ops. Att'y. Gen. 97-214; 97-123 and 94-193.