COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Fulton and White
Argued at Buckingham, Virginia


SADLER BROTHERS OIL COMPANY, d/b/a
  SADLER TRAVEL PLAZA, ET AL.
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0463-24-2                  JUDGE JUNIUS P. FULTON, III
                                              AUGUST 12, 2025
COMMONWEALTH OF VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
Louis R. Lerner, Judge Designate

Jason C. Hicks (Ian R. Dickinson; William M. Stanley, Jr.;
Anthony F. Troy; Womble Bond Dickinson (US) LLP; The Stanley
Law Group, PLLC, on briefs), for appellants.

Rick W. Eberstadt, Deputy Solicitor General (Jason S. Miyares,
Attorney General; Steven G. Popps, Chief Deputy Attorney General;
Calvin C. Brown, Senior Attorney General; Erin R. McNeill,
Assistant Attorney General, on brief), for appellees.

Amici Curiae: William J. Howell, John Chichester, Lionell Spruill
Senior, Vance Wilkins, Ward Armstrong, and J. Chapman Petersen
(J. Chapman Petersen; Federico J. Zablah; Chap Petersen &
Associates, PLC, on brief), for appellants.

Amici Curiae: Virginia Asian American Store Owners Association
and the Amusement and Music Operators of Virginia, Inc.
(Stephen C. Piepgrass; Timothy L. McHugh; Jeff P. Johnson;
Troutman Pepper Hamilton Sanders LLP, on brief), for appellants.


Sadler Brothers Oil Company ("Sadler") owns and operates truck stops offering patrons the

opportunity to play "skill games." Their initial complaint challenged a 2020 law banning skill

games as a violation of their rights to free speech and due process. In 2022, after Sadler obtained a

temporary injunction of which the Supreme Court denied review, the General Assembly passed an

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

amendment to the criminal ban of skill games as part of a rider to the 2022 special session state budget legislation. Sadler filed an amended complaint challenging the 2022 ban, adding an assertion that the 2022 amendment violated the single-object rule, to which the Commonwealth filed a plea in bar and demurrer. The trial court granted in part and denied in part the Commonwealth's plea and demurrer, finding that the 2022 amendment did not violate the single-object rule, but overruled the Commonwealth's motions with respect to Sadler's free speech claims. The trial court granted a temporary injunction enjoining enforcement of the 2022 amendment banning skill games before trial. The Commonwealth petitioned the Supreme Court for review. The Supreme Court granted the petition and vacated the temporary injunction.

On remand, the trial court granted the Commonwealth's motion for summary judgment and dismissed Sadler's claims with prejudice. Sadler appealed, arguing that the "Skill Game Rider" to the 2022 budget violated the Virginia Constitution's single-object rule. For the following reasons, we affirm the decision of the trial court.

BACKGROUND

In 2020, the General Assembly passed legislation amending the definitions of "illegal gambling" and "gambling device" to include a definition of "skill games" as prohibited gambling under Code § 18.2-325 but provided an exemption for "family entertainment centers" under Code § 18.2-334.6 (collectively, the "2020 ban"). The General Assembly agreed to allow delayed enforcement of the 2020 ban for one year during which skill games would be taxed and regulated, and those funds would be used to aid COVID-19 pandemic relief.

Shortly before the end of the one-year period of delayed enforcement, Sadler filed their initial complaint seeking declaratory and injunctive relief, arguing that the 2020 ban violated their freedom of speech and due process rights. Following a hearing on December 6, 2021, the trial court issued a temporary injunction enjoining enforcement of the 2020 ban until trial. The

Commonwealth petitioned the Supreme Court of Virginia for review, but the petition was denied, and the injunction remained in place.

During the General Assembly's 2022 special session, a criminal law rider was proposed as an addendum to the budget bill, rescinding and reenacting Code §§ 18.2-325 and -334.6 refining the definition of "skill game" and replacing the exemption for "family entertainment centers" with an "amusement device" exemption (collectively, the "2022 ban"). Specifically, the proposed amendments revised the definition of "skill game" under Code § 18.2-325(6) to include devices that contain a meter to record the number of free games that are rewarded and enable a person to increase the chances of winning portions of games by paying more than the amount that is usually required to play the game. The amendment also defined "amusement devices" under Code § 18.2-334.6 as devices that did not enter players into a lottery or permit them to receive a prize having a value greater than the cost of playing. The title of the 600 plus page budget bill also included references to amendments to several sections of the Agriculture, Animal Care, and Food; Alcoholic Beverage and Cannabis Control; Crimes and Offenses; Education; and Taxation titles of the Virginia Code. The full title was:

> An Act for all appropriations of the Budget submitted by the Governor of Virginia in accordance with the provisions of § 2.2-1509, Code of Virginia, and to provide a portion of the revenues for the two years ending respectively on the thirtieth day of June, 2023, and the thirtieth day of June, 2024, and an Act to amend and reenact §§ 3.2-5145.5, 4.1-1101, 18.2-325, 18.2-334.6, 22.1-349, 58.1-322.02, 58.1-322.03, 58.1-339.8, 58.1-439.3, 58.1-611.1, and 59.1-200 of the Code of Virginia.

In August 2022, Sadler amended their complaint, claiming that in addition to violating free speech and due process rights, the 2022 ban violated the Virginia Constitution's single-object rule. The Commonwealth again filed a plea in bar and demurrer as to all counts.[1] The

---

[1] Although Sadler's amended complaint listed only two counts, namely free speech and due process claims, it was essentially three counts as the Count II which primarily addressed due

- 3 -

trial court granted in part and denied in part, dismissing Count II's due process and single-object rule claim with prejudice but allowing Count I, reasserting the free speech claim, to remain.  The trial court issued another temporary injunction enjoining enforcement of the 2022 ban until trial.

The Commonwealth again petitioned the Supreme Court of Virginia for interlocutory review of the temporary injunction.  By order dated October 13, 2023, a three-justice panel of the Supreme Court reversed the trial court and dissolved the injunction, holding that the 2022 ban was likely constitutional because it regulated the conduct of gambling, not the expressive content of the games and that the 2020 ban no longer existed because those statutes were amended and consequently replaced by the 2022 legislation.  *Commonwealth v. Sadler Bros. Oil. Co.*, No. 230610, 2023 Va. LEXIS 68 (Oct. 13, 2023) (order).  On remand, the Commonwealth moved for summary judgment as to the sole remaining count, the free speech claim, which the trial court granted, dismissing this count with prejudice.  Sadler timely appeals.[2]

_____

process challenges to the 2022 ban also asserted that the 2022 ban violated the single-object rule of the Virginia Constitution.

[2] The Commonwealth argues that Sadler does not have standing to bring this appeal because there is no redress for their grievances.  They base this argument on the fact that the trial court's temporary injunction enjoining enforcement of the 2020 ban was still in effect during the pendency of the case before the trial court challenging the 2022 ban.  However, the Supreme Court in its 2023 order stated that "[a]lthough the circuit court formally has not vacated that injunction in an order, it is effectively moot because *no one* can enforce the 2020 skill games ban because that statutory scheme no longer exists" and that the 2022 amendments "substantially revised" the pertinent statutory provisions that gave rise to the temporary injunction and, therefore, the decree of the trial court could not be enforced.  *Sadler Bros. Oil Co.*, 2023 Va. LEXIS 68, at *4 (emphasis added) (citing *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 430-32 (1855)).  Based on the Supreme Court's determination that the injunction enjoining enforcement of the 2020 ban was moot and the Commonwealth's failure to present an argument addressing Sadler's standing to challenge the 2022 ban before the trial court, we find that the Commonwealth has waived this argument on appeal.  Rule 5A:18.

ANALYSIS

On appeal, Sadler argues that the trial court erred in sustaining the Commonwealth's plea in bar and demurrer as to Count II of their amended complaint by rejecting Sadler's contention that the 2022 ban violated the single-object rule of Virginia's Constitution.

The constitutionality of a legislative act is a question of law that is reviewed de novo. *Toghill v. Commonwealth*, 289 Va. 220, 227 (2015). All actions of the General Assembly are presumed to be constitutional, and "[t]here is . . . no stronger presumption known to the law." *Montgomery Cnty. v. Va. Dep't of Rail and Pub. Transp.*, 282 Va. 422, 435 (2011). This presumption is difficult to overcome because, as this Court and the Supreme Court have recognized on multiple occasions that challenging the constitutionality of an enactment of the General Assembly is a "daunting task." *Harrison v. Day*, 200 Va. 764, 770 (1959). A statute should not be invalidated unless it clearly violates a provision of the United States or Virginia Constitutions. *Marshall v. Northern Va. Transp. Auth.*, 275 Va. 419, 427 (2008). Further, any reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of its validity. *Id.* at 428. In determining whether a statute violates a provision of the United States or Virginia Constitutions, the terms of the Constitution are to be given "a liberal construction in order to sustain the enactment in question, if practicable." *Id.*

Virginia's single-object rule provides that "[n]o law shall embrace more than one object, which shall be expressed in its title." Va. Const. art. IV, § 12. The Supreme Court has long held that the purpose of the single-object rule is to prevent the legislature from using deceptive titles which would conceal rather than reveal the true character of legislation; to prohibit them from bringing together into one bill subjects which are diverse and dissimilar and have no kindred connections; and to prevent surprising or fraudulent legislation by giving it a title which gives no intimation of what the act contains. *Doe v. Brown*, 203 Va. 508, 514 (1962). As to amendatory

- 5 -

acts, the Supreme Court has been clear that "in amending the Code[,] constitutional requirements as to title are satisfied if the amendatory act refers in its title to the specific chapter and section thereof to be amended." *Parker v. Commonwealth*, 215 Va. 281, 283 (1974) (citing *Commonwealth v. Brown*, 91 Va. 762, 775 (1895)).

Here, the full title of the 2022 budget bill was:

> An Act for all appropriations of the Budget submitted by the Governor of Virginia in accordance with the provisions of § 2.2-1509, Code of Virginia, and to provide a portion of the revenues for the two years ending respectively on the thirtieth day of June, 2023, and the thirtieth day of June, 2024, and an *Act to amend and reenact §§* 3.2-5145.5, 4.1-1101, *18.2-325, 18.2-334.6*, 22.1-349, 58.1-322.02, 58.1-322.03, 58.1-339.8, 58.1-439.3, 58.1-611.1, and 59.1-200 of the Code of Virginia.

(Emphases added). The title of the budget bill clearly references Code §§ 18.2-325 and -334.6, which criminalize "skill games" as illegal gambling, and the bill title makes clear that it includes an act to amend and reenact those specific code sections. Therefore, the 2022 ban does not violate the title requirement of the single-object rule under the Virginia Constitution.[3]

In addition to the title requirement, the Supreme Court has long held that "the act should not include legislation so incongruous that it could not, by any fair indictment, be considered germane to one general subject." *Ingles v. Straus*, 91 Va. 209, 216 (1895). Further,

> [t]he connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification.

---

[3] Sadler concedes, on brief, that the 2022 ban satisfies the title requirement of the single-object rule but argues that this alone is not sufficient for a finding that the 2022 ban does not violate the single-object rule.

*Id.* at 216-17.  Here, the General Assembly amended statutes regulating gambling in the Commonwealth as a part of a broader appropriations and budget bill.  While *Ingles* makes clear that the connection between the primary subject of an act and a challenged provision does not need to be logical if they are in fact, germane to the object expressed in the title, the relationship between amending the definition of illegal gambling to include skill games and a budget act is inherently logical.  In the instant case of the biennial budget, Sadler argues that because the budget is limited by its nature to a duration of two years, a skill game ban that theoretically has an unlimited duration being included in a limited duration budget enactment is unconstitutional.  We are unpersuaded by this argument given the fact that, when this Court is asked to evaluate the constitutionality of a legislative enactment we are required to resolve any doubt in favor of the validity of the statute.  *See Marshall*, 275 Va. at 428.  The primary subject of the 2022 budget bill was the revenue and expenditures of the Commonwealth for the 2022 and 2023 fiscal years, and by amending Code §§ 18.2-325 and -334.6 as a part of that bill, the General Assembly directly impacted the Commonwealth's revenue sources.  Therefore, the 2022 ban was germane to the 2022 budget bill and does not violate the single-object rule of the Virginia Constitution.

It is worth noting that the General Assembly has a history of regulating gambling in legislation focused on appropriations and revenue.  Subtitle IV of Title 58.1 of the Virginia Code explicitly addresses "Other Sources of State Revenue" including the legalization of certain forms of gambling such as the Virginia Lottery, sports betting, and casino games, regulating them through taxation.  Code §§ 58.1-4000 through -4141.  The 2020 ban was initially passed as a broader "Gambling Law" expanding legalized gaming in some areas as additional sources of state revenue under Title 58.1 with the General Assembly determining that "skill games" should instead be categorized as illegal gambling as defined in Code § 18.2-325.  This Court presumes that the General Assembly chose the words it used when enacting relevant statutes with care and

- 7 -

that any differences in language when addressing similar subjects in different parts of the Code are intentional. *See Zinone v. Lee's Crossing Homeowner's Ass'n*, 282 Va. 330, 337 (2011). Based on this presumption, we must defer to the General Assembly's choice to legalize certain other forms of gambling and regulate them as "Other Sources of State Revenue" while including "skill games" under the definition of "illegal gambling" elsewhere in the Virginia Code. *See* Code §§ 18.2-325; 58.1-4000 through -4141.

## CONCLUSION

For the foregoing reasons, we find that the 2022 ban did not violate the single-object rule of the Virginia Constitution. Therefore, we affirm the trial court's grant of the Commonwealth's plea in bar and demurrer as to Count II of Sadler's amended complaint.

*Affirmed.*